UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| E.F. TRANSIT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:13-cv-01927-WTL-MJD |
| | ) |
| INDIANA ALCOHOL AND TOBACCO COMMISSION, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S MOTION TO COMPEL**

This matter comes before the Court on Plaintiff's Motion to Compel. [Dkt. 91.] For the reasons set forth below, the Court **GRANTS** Plaintiff's motion.

### I.  Background

On December 6, 2014, E.F. Transit, Inc. ("Plaintiff") sued the Indiana Alcohol and Tobacco Commission, alleging that the Commission's interpretation and enforcement of Indiana state law was inconsistent with and therefore preempted by federal law. [*See* Dkt. 1 (Pl.'s Compl.).]

The allegations arise from Indiana's regulation of the state's alcoholic beverage industry. Under Indiana law, a state-issued permit is required for any business to serve as a manufacturer, wholesaler, or retailer of alcoholic beverages, including beer, wine, and liquor. *See* Ind. Code §§ 7.1-3-1-1 *et seq*. In addition, Indiana prohibits a private beer wholesaler from holding an interest in a liquor permit, and vice versa. *See, e.g.*, Ind. Code Ann. § 7.1-5-9-3 ("It is unlawful for the holder of a brewer's or beer wholesaler's permit to have an interest in a liquor permit of any type under this title.").

1

Plaintiff in this case is a trucking company with operations based at a warehouse in Indiana. [Dkt. 1 ¶ 9.] Pursuant to Indiana law, Plaintiff is licensed to transport and deliver all varieties of alcoholic beverages, including beer, wine, and liquor. [*Id.*] Plaintiff shares common ownership with Monarch Beverage Company ("Monarch"), a state-licensed beer and wine wholesaler, and Plaintiff routinely transports Monarch's beer and wine to retailers across Indiana. [*Id.* ¶ 27.] Plaintiff also subleases a portion of its warehouse to Monarch and allows Monarch to store its beer and wine in that location. [*Id.* ¶ 28.]

In 2009, Plaintiff reached a tentative agreement to store and ship products for Indiana Wholesale Wine & Liquor Company ("IWWL"). [*Id.* ¶ 31.] IWWL then applied to the Indiana Alcohol and Tobacco Commission ("Defendant" or "Commission") for permission to change the location of its warehouse to Plaintiff's Indiana location. [*Id.* ¶¶ 31-33.] The Commission, however, allegedly rejected this application on the grounds that "allowing a liquor wholesaler (Indiana Wholesale) to share a warehouse with a beer wholesaler (Monarch) and its corporate sister (E.F. Transit) would create a prohibited joint interest in a beer and liquor wholesaler's permit." [*Id.* ¶ 34.]

As a result, IWWL withdrew its application. [*Id.* ¶ 35.] Plaintiff and IWWL then arranged to enter a more limited services agreement in which Plaintiff would ship IWWL's products without any change in the location of IWWL's warehouse. [*Id.* ¶ 36.] Plaintiff asked the Commission for an advisory opinion giving advance approval to this arrangement, but the Commission declined to provide such approval. [*Id.* ¶¶ 38-40.] Plaintiff and IWWL were thus unable to finalize their services agreement. [*Id.* ¶¶ 41-43.]

Plaintiff then filed this lawsuit to challenge the Commission's actions. Plaintiff alleges that the Commission's interpretation of Indiana law is inconsistent with and therefore preempted

by the Federal Aviation Administration Authorization Act ("FAAAA"). [*Id.* ¶ 45-47.] That Act provides, *inter alia*, that a state "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501. Plaintiff argues that the Commission's application of Indiana law violates this provision, and Plaintiff thus seeks an injunction prohibiting the Commission from enforcing the relevant Indiana laws against it. [*Id.* at 12.]

The Commission answered Plaintiff's complaint on January 1, 2014. [Dkt. 18.] During discovery, a dispute developed over the Commission's decision to withhold certain documents on the basis of the attorney-client privilege, the deliberative process privilege, and the investigative privilege. [*See* Dkt 91.] The parties were unable to resolve the dispute, [*see id.* at 3 n.1], and Plaintiff filed the currently pending Motion to Compel on February 10, 2015. Plaintiff contends that the privilege that the Commission has asserted with respect to each document at issue either does not apply to the document or has been waived. [Dkt. 91 at 2.]

After Plaintiff filed its motion, the Commission produced many of the documents Plaintiff originally sought, [*see* Dkt. 103 at 2 (Def.'s Resp.)], and Plaintiff then withdrew its motion with respect to the remaining documents for which Defendant asserted the deliberative process privilege. [Dkt. 105 at 17.] The only documents at issue were thus Bates Nos. 45458, 61198, 61274-75, 51903, 34986, 35163, and 38097, for which Defendant asserted the attorney-client privilege [Dkt. 103 at 5-6, 8]; and the documents Bates Nos. 141203 through 141230, for which Defendant asserted the investigative privilege. [*Id.* at 12.] Defendant then added document Bates No. 150279 to its privilege log and asserted that the investigative privilege applied to this document as well.

3

On March 6, 2015, the Court conducted a hearing to address the parties' arguments. The parties agreed that they had no remaining dispute regarding document Bates No. 34986. [Motion to Compel Hr'g, March 6, 2015 at 11:10.] Defendant also agreed to produce documents Bates Nos. 35163 and 38097 [Hr'g at 11:23]; document Bates No. 51903 [Hr'g at 11:31-32]; and document Bates No. 61198 [Hr'g at 11:35.] This left only documents Bates Nos. 45458, 61274-75, 141203 through 30, and 150279 at issue. The Court has reviewed these documents *in camera* and now addresses the parties' arguments.

## II. Discussion

A party may obtain discovery regarding "any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). A party may also "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The party resisting such a motion bears the burden to show why a particular discovery request is improper. *See, e.g.*, *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009). When the party resists on the basis of privilege, that party must demonstrate both that the privilege applies and that it has not been waived. *See, e.g.*, *Acosta v. Target Corp.*, 281 F.R.D. 314, 321 (N.D. Ill. 2012) (attorney-client privilege); *Doe v. Hudgins*, 175 F.R.D. 511, 514 (N.D. Ill. 1997) (investigative privilege).

### A. Attorney-Client Privilege

The attorney-client privilege "protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010). A court must thus ask "(1) whether legal advice of any kind was sought from a professional legal adviser in his capacity as such; and (2) whether the communication was related to that purpose and made in confidence by the client." *Id.* (alterations omitted) (quoting *United States v. Evans*, 113 F.3d

4

1457, 1461 (7th Cir.1997)). The party asserting the privilege has the burden to establish each element of the privilege. *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991).

If the party meets this burden, the privilege attaches and remains intact even after the termination of the attorney-client relationship. *Id.* The privilege, however, "is in derogation of the search for the truth and, therefore, must be strictly confined." *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000). Further, "[n]ot all information transmitted to an attorney becomes cloaked with the attorney-client privilege." *White*, 970 F.2d at 334. If a party transmits information to an attorney with the expectation that it will be disclosed to third parties, the privilege does not apply. *Id.* Similarly, if a party communicates with an attorney for purposes other than obtaining legal advice, the privilege does not apply. *See, e.g.*, *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003) (noting privilege does not apply to business advice); *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000), *amended* (Apr. 4, 2000) (distinguishing between attorney acting "in his business or legal capacity").

In this case, the Commission asserts the attorney-client privilege with respect to documents Bates Nos. 48458 and 61274-75. [*See* Dkt. 103 at 5.] The Commission's privilege log indicates that these documents are emails from David Rothenberg, the Commission's Executive Secretary, to Alex Huskey, the Commission's Chairman. [Dkt. 91-1 at 7, 10.]

Plaintiff acknowledges that Secretary Rothenberg is an attorney, [*see* Dkt. 91 at 6], but Plaintiff asserts that the Executive Secretary is a "ministerial" position and that the Secretary is not authorized to provide legal advice to the Commission. [*Id.* at 7.] As support, Plaintiff cites a portion of the statutes governing the Commission, which states that "[t]he commission, with the consent of the governor, shall employ an executive secretary to aid the commission in the efficient administration of its powers and duties." [*Id.* citing (Ind. Code Ann. § 7.1-2-2-7).]

5

Plaintiff also cites several emails that purportedly show the Executive Secretary acting in a ministerial rather than a legal role. In one, for instance, "the Executive Secretary polls the Commissioners about the process to be used in considering IWWL's application," [Dkt. 91 at 8 (citing Dkt 91-7)], and in another, the Executive Secretary notes that he provided the Commissioners "with some very basic first year law school review materials" [*Id.* (quoting Dkt. 91-6).] Plaintiff thus argues that, as a matter of statute and a matter of practice, the Executive Secretary is not a legal advisor, such that documents Bates Nos. 48458 and 61274-75 cannot fall within the attorney-client privilege. [*Id.* at 8-9.]

This argument is unpersuasive: the fact that the cited statute refers to "efficient administration" of the Commission hardly establishes that administration is the Executive Secretary's **only** duty. Likewise, the fact that the Executive Secretary may have performed ministerial tasks at certain times does not preclude the Secretary from acting as a lawyer at **other** times. In addition, one of Defendant's former commissioners testified that she considered the Executive Secretary to be "general counsel for the agency," [Melissa Coxey Dep. 12:1-3, January 28, 2015], and she added that, in her previous role as an advisor to the Executive Secretary, she assisted in "drafting findings of fact and conclusions of law." [Coxey Dep. 12:9-14.] This indicates that the Executive Secretary was in fact involved in the legal work of the commission, such that his communications may have been privileged.

This conclusion, however, does not end the matter: As Plaintiff notes, [Dkt. 91 at 8-9], not all information sent to or from an attorney is privileged. *See, e.g.*, *White*, 950 F.2d at 430 ("Not all information transmitted to an attorney becomes cloaked with the attorney-client privilege."); *Hamdan v. Indiana Univ. Health N.*, LLC, No. 1:13-CV-00195-WTL, 2014 WL 2881551, at *5 (S.D. Ind. June 24, 2014) ("Simply copying attorneys on an email chain in order

to keep them abreast of HR and other business-related occurrences does not transform the emails into an attorney's investigation with a built-in expectation of legal services to be rendered which would qualify for attorney-client privilege."). Thus, even when the Commission's Executive Secretary was acting as an attorney, not all information sent to or from the Secretary became privileged; instead, the privilege attached only to communications that requested or gave legal advice. *See, e.g., Acosta*, 281 F.R.D. at 321 ("[T]he privilege does not apply to an e-mail . . . that may include an attorney, but where no request for legal advice is made and the input from the attorney is business-related and not primarily legal in nature.").

In this case, document Bates No. 48458 does not contain a request for or provision of such legal advice. Defendant specifically directed the court to lines 3 and 4 of the email at issue and suggested that these lines amounted to a request for counsel. [Hr'g at 11:12.] The Court, however, does not agree: In these lines, the Executive Secretary states only that "I imagine" the attorney's general office "will let us know how [the filing of Plaintiff's complaint]" affects Plaintiff's pending application. This letter is thus not legal advice itself; rather, it is speculation about legal advice that might materialize at some later time. And while that advice—if and when it is ever given—might *itself* be privileged, the mere *conjecture* about *later* provision of that advice is *not* privileged. Plaintiff's motion to compel production of document Bates No. 48458 is therefore **GRANTED**.

The document Bates No. 61274-75 also lacks legal advice. This document contains two communications: the first, Bates No. 61274, is an email, and the second, Bates No. 61275, is an attached memo. The email merely describes the memo, and Defendant agreed at the hearing that if the memo itself is not privileged, then the email describing it is not privileged. [Hr'g at 11:40.]

The memo, in turn, describes the "background, status, dates, and next actions" for two lawsuits involving the Commission and one permit application pending before the Commission. The majority of the memo consists only of factual data describing information such as when the lawsuits were filed, who filed them, and what deadlines needed to be met. Such factual descriptions—even about litigation—do not amount to legal advice and thus are not privileged. *See, e.g.*, *Stanziale v. Vanguard Info-Solutions Corp.*, No. ADV 06-2208 (MBK), 2008 WL 1808318, at *1 (Bankr. D.N.J. Apr. 21, 2008) ("It is generally recognized that the communication of factual information is not protected by the attorney-client privilege. For example, reports reflecting the status of litigation and containing purely factual information are not privileged.").

Defendant nonetheless contends that the "final section" of the memo contains legal advice that renders the document privileged. [*See* Hr'g at 11:38.] This section is labelled "ATC Decision Points" and details the issues on "which the ATC must make a determination." The document, however, then states that the Commission need not make any decision on issues related to the two lawsuits, as those matters "are in court," rather than before the ATC. The document thus specifically avoids giving any advice or counsel of any sort regarding the decisions to be made in these lawsuits.

Next, even when addressing the permit application pending before the Commission, the document merely states that the Commission "must make a determination" regarding what materials to disclose to the applicant and "must make a decision" on whether to approve the application. The document provides no analysis or advice regarding which way the Commission should decide these issues, nor does it provide any sort of analysis or advice regarding the process by which the Commission should make these decisions. The final section of the memo is

8

thus a mere factual statement that decisions *must* be made; it provides no legal advice *about* those decisions, and thus is not privileged.[1] The Court accordingly **GRANTS** Plaintiff's motion to compel production of document Bates No. 61274-75.

### B. Investigative Privilege

The final documents at issue are Bates Nos. 141203 through 141230 and 150279. These documents detail an investigation conducted by members of the state's Excise Police at the request of the Commission. They indicate that Excise Police officers reviewed materials about E.F. Transit and Monarch; visited the E.F. Transit warehouse; and prepared a draft report indicating that Plaintiff's proposed agreement with IWWL may have violated state law.

Defendant asserts that the investigative privilege covers these documents. [Dkt. 103 at 12.] This privilege "is a qualified common law privilege protecting civil as well as criminal law enforcement investigatory files from civil discovery." *Jones v. City of Indianapolis*, 216 F.R.D. 440, 443 (S.D. Ind. 2003) (quotation omitted). Its purpose is to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise prevent interference in an investigation." *Id.* at 444 (quotations omitted).

The investigative privilege is not absolute: "It can be overridden in appropriate cases by the need for the privileged materials." *Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997). A court assessing the privilege must engage in the "particularistic and

---

[1] At the hearing, Defendant conceded that application of the attorney-client privilege was debatable. [*See* Hr'g at 11:40 (noting document could "be read either way").] Because the attorney-client privilege "must be strictly confined," *In re Grand Jury Proceedings*, 220 F.3d at 571, the Court finds that this concession supports its ultimate conclusion that the document is not privileged.

9

judgmental task" of weighing "the need of the litigant who is seeking privileged investigative materials" against "the harm to the government if the privilege is lifted." *Id.* Relevant factors include:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;
> (2) the impact upon persons who have given information of having their identities disclosed;
> (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;
> (4) whether the information sought is factual data or evaluative summary;
> (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;
> (6) whether the investigation has been completed;
> (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation;
> (8) whether the plaintiff's suit is nonfrivolous and brought in good faith;
> (9) whether the information sought is available through other discovery or from other sources; and
> (10) the importance of the information sought to the plaintiff's case.

*Jones*, 216 F.R.D. at 444 (citation omitted); *see also Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973) (applying same factors). "The Court has considerable leeway weighing these factors in the undertaking of the essential balancing process." *Jones*, 216 F.R.D. at 444 (quotation omitted).

At the hearing, Defendant conceded that the first, second, fourth, sixth, seventh, eighth, and ninth factors weighed in favor of disclosure of the investigative report, [Hr'g at 11:51, 11:55, 11:57], and the Court's *in camera* review of the documents at issue confirms this conclusion.[2] Defendant then argued that the third factor—"the degree to which governmental self-evaluation

---

[2] Defendant briefly argued in its response that factors four and nine disfavored disclosure. [Dkt. 103 at 13 (noting that certain portions of the documents were "more evaluative in nature"); *id.* (noting that a revised version of one of the documents had been provided and "contain[ed] much of the same information" as the documents being withheld).] Defendant's concessions at the hearing, however, indicate that these arguments have been abandoned, and in any case, Plaintiff's terse assertions would not outweigh the Court's conclusion that the remaining factors discussed below warrant disclosure.

and consequent program improvement will be chilled"—militated against disclosure. [Hr'g at 11:52.] Defendant explained that the Commission is an agency that is required by statute to regulate a large subset of the businesses in Indiana. If, Defendant argued, the Commission were required to disclose its report in this case, then the report could be passed among the regulated businesses with presumably deleterious effects on the Commission's ability to regulate these businesses in the future. [Hr'g 11:52-53.]

Defendant, however, did not explain these effects and did not identify any specific harms that might occur if the report were disclosed. [Hr'g at 11:52-55.] Defendant's vague and speculative assertion of potential harm thus leaves the Court unconvinced that Defendant has carried its burden to establish that the investigative privilege applies to this document. Additionally, Defendant's concerns about the broader impact of disclosing the report are unwarranted: any order on Plaintiff's present motion applies only to the documents currently at issue, and any such order is not a basis for disclosure of any *other* report that Excise Police personnel have already prepared or may prepare in the future. This limitation necessarily constrains the broader impact of the disclosure of the documents that Plaintiff seeks.

Moreover, the Court in this case has previously entered a protective order allowing the parties to prevent the widespread dissemination of materials they deem confidential. [*See* Dkt. 59 at 2.] Defendant may therefore produce the report subject to this protective order and thereby obviate any concerns that the report will be passed among non-parties. This further reduces the need for application of the investigative privilege, and the Court thus finds that factor three weighs in favor of disclosure. *See, e.g.*, *Santiago v. City of Chicago*, No. 09 C 3137, 2010 WL 1257780, at *3 (N.D. Ill. Mar. 26, 2010) ("The law enforcement investigative privilege is

overcome in the instant case by [plaintiff's] need for the information and the [defendant's] concerns can be addressed by an appropriate protective order.").

Defendant next argued that factor five weighs in favor of withholding the report. [Hr'g at 11:56.] This factor involves whether a "criminal proceeding [is] either pending or reasonably likely to follow from the incident in question." *Jones*, 216 F.R.D. at 444. As Defendant acknowledged, [Hr'g at 11:57], the current case involves no such proceedings. Nonetheless, Defendant argued that—had Plaintiff actually completed either of its proposed arrangements with IWWL—then Plaintiff could have been subject to permit revocation proceedings that are analogous to criminal proceedings. [Hr'g at 11:57.]

This argument is unavailing: Defendant conceded that "the incident in question" was Plaintiff's request for an advisory opinion from the Commission. [Hr'g at 12:08-09.] Defendant then confirmed that merely asking for such an opinion does not violate any statute. [Hr'g at 12:08-09.] There is accordingly no possibility that the "incident in question" will give rise to *any* proceedings—criminal or otherwise—against Plaintiff. As it stands, that is, Plaintiff has violated no law or regulation, leaving no risk that disclosing the documents at issue would jeopardize the state's ability to conduct any proceedings against Plaintiff. This factor thus favors disclosure.

Finally, Defendant argued that factor ten weighed in favor of withholding the report. [Hr'g at 12:00.] Defendant noted that Plaintiff's claim is that Indiana's state law is preempted by the FAAAA. [Hr'g at12:01.] This, according to Defendant, is merely a matter of statutory interpretation, such that the information in the investigative report is irrelevant to Plaintiff's case. [Hr'g at 12:01.]

The Court does not agree. The portion of the FAAAA at issue in this litigation provides that a state "may not enact or **enforce** a law, regulation, or other provision . . . related to a price,

route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501 (emphasis added). The way in which Indiana has chosen to *enforce* its alcoholic-beverage regulations is thus plainly relevant to the preemption issue. Further, the investigative documents at issue are highly probative of this issue, as they provide numerous examples of the kinds of conduct Defendant considers to be violations of Indiana law. The report thus indicates whether the enforcement of Indiana law has an effect on the "price, route, or service" of a motor carrier's transportation of property, 49 U.S.C. § 14501, such that the report bears on whether Indiana's law is in fact preempted. As a result, the report is important to Plaintiff's preemption claim, and the tenth factor thus favors disclosure.

Based on the above, the Court concludes that the investigative privilege does not apply to documents 141203-30 and 150279: with regard to each factor in *Jones*, Defendant has either 1) conceded that the factor favors disclosure; or 2) has advanced an argument that lacks merit. Balancing these factors can thus only result in disclosure of the documents, and Plaintiff's motion to compel these documents is therefore **GRANTED**.

### III. Conclusion

For the reasons set forth above, the Court **GRANTS** Plaintiff's Motion to Compel. [Dkt. 91.] Defendant is ordered to produce documents Bates Nos. 45458, 61274-75, 141203 through 141230, and 150279 on or before **Tuesday, March 10, 2015**. Defendant shall also produce by that date any documents that it agreed to produce at the hearing and that have not already been produced to Plaintiff.

Date: 03/09/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Michael P Maxwell, Jr
CLARK QUINN MOSES SCOTT & GRAHN LLP
mmaxwell@clarkquinnlaw.com

John B. Herriman
CLARK, QUINN, MOSES, SCOTT & GRAHN
bherriman@clarkquinnlaw.com

Anne Kramer Ricchiuto
FAEGRE BAKER DANIELS LLP (Indianapolis)
anne.ricchiuto@FaegreBD.com

Anthony Scott Chinn
FAEGRE BAKER DANIELS LLP (Indianapolis)
scott.chinn@faegrebd.com

David K. Herzog
FAEGRE BAKER DANIELS LLP - Indianapolis
david.herzog@faegrebd.com

J. Murray Clark
FAEGRE BAKER DANIELS LLP - Indianapolis
murray.clark@faegrebd.com

Sara Teresa Martin
INDIANA ATTORNEY GENERAL
sara.martin@atg.in.gov

Betsy M. Isenberg
OFFICE OF THE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov

Allison Jones
WILLIAMS & CONNOLLY LLP
ajones@wc.com

Kannon K. Shanmugam
WILLIAMS & CONNOLLY LLP
kshanmugam@wc.com

Amy Saharia
WILLIAMS & CONNOLLY, LLP
asaharia@wc.com

Barry S. Simon
WILLIAMS & CONNOLLY, LLP
bsimon@wc.com